IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Newport News Division*

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 4:21-cr-56 |
| ) | |
| LADRALE ANTONIO PUTNEY, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION TO SUPPRESS
AND REQUEST FOR AN EVIDENTIARY HEARING**

The Defendant, Ladrale Antonio Putney ("Mr. Putney"), by and through counsel, moves for an Order suppressing all evidence obtained or derived from the search of Mr. Putney and his vehicle because that evidence was obtained in violation of the Fourth and Fourteenth Amendments.

First, the police abandoned the purpose of the stop and unlawfully extended the traffic stop. Second, the odor or presence of marijuana did not provide probable cause to search the vehicle and its occupants. With the changes to laws regarding marijuana legality, in Virginia as well as across the country, the caselaw that has been relied on for many years to justify searches based on the odor of marijuana no longer applies. Third, even if the Court were to uphold the search of the passenger and the vehicle, there was no probable cause to search Mr. Putney without a warrant. Therefore, all evidence obtained or derived from the searches of Mr. Putney and his vehicle must be suppressed.

Counsel requests an evidentiary hearing on this motion.

**STATEMENT OF FACTS[1]**

On February 8, 2021, at approximately 12:30 a.m., Officer Thompson with the Newport News Police Department claimed that he saw a gray Chevrolet Malibu going the wrong way down

---

[1] These facts are based on written reports, search warrant applications, affidavits in support, body cameras and warrant returns. The body cameras for the three officers – Thompson, Gravatt, and Crutcher – are Exhibit 1. All circumstances are not observable on Officer Thompson's body

1

25th Street without any lights on and initiated a traffic stop. Body cameras show both vehicles facing the correct direction on 25th Street. Thompson first approached the driver's side, where Mr. Putney was seated, and retrieved Mr. Putney's registration and identification card. The officer asked Mr. Putney if he had been drinking. Mr. Putney said he had a Corona about an hour and a half ago. There was one male passenger in the car, Kristin Greene ("Mr. Greene").

Officer Thompson ran Mr. Putney's name through the police computer system and found that his license was suspended for not paying a reinstatement fee, of which Mr. Putney was unaware. Upon returning to the car, the officer told Mr. Putney to step out of the vehicle, and Mr. Putney complied. In response to the officer's questions, Mr. Putney told him that the vehicle was his, that he had just left his cousin's house and provided the address, and he was heading back home to Richmond. Without a valid license, Mr. Putney could not drive away from the stop, and Mr. Greene told officers he was not licensed. Mr. Putney told officers that his cousin, who lived just a couple blocks away and was licensed, could come get the car. Officer Thompson had Mr. Putney perform a couple pre-exit field sobriety tests, which he passed without issue. Officer Thompson then instructed Mr. Putney to go stand by the officer's vehicle where Officer Gravatt stood, and Mr. Putney did so. The officer still possessed Mr. Putney's identification card.

Rather than write any tickets for Mr. Putney at that time, Officer Thompson walked back to the driver's side of the Malibu and spoke to Mr. Greene, who remained in the passenger seat. Officer Crutcher was on scene standing next to the passenger side of the Malibu. Officer Thompson told Mr. Greene that the car smelled like marijuana and asked if any marijuana was in the car, "even a little bit? A roach or anything like that?" Mr. Greene said that he had smoked earlier in the night

---

camera because the camera was covered by his jacket obstructing the view. Mr. Putney reserves the right to challenge these facts in a hearing or at trial.

2

and produced a small amount of marijuana from his pocket, approximately three grams.[2] Officer Thompson told Mr. Greene to step out of the car and, without asking for consent, searched Mr. Greene, pulling items out of his pockets and placing them on the top of the car. After finding no contraband on Mr. Greene, he had Mr. Greene to step to the side with Officer Crutcher, who told Mr. Greene that the marijuana is a civil penalty of $25.

Officer Thompson then opened the passenger car door, using his flashlight to search the seat, floorboard, and passenger area. He never asked Mr. Putney if he had consent to search the vehicle. He then opened the door behind the passenger seat and began searching the back seat of the vehicle. Behind the passenger seat, Officer Thompson found a black plastic bag that contained approximately 30 grams of suspected crack cocaine and Mr. Greene's medical identification card.

The officers placed Mr. Greene under arrest and handcuffed him. They also handcuffed and searched Mr. Putney. Upon searching Mr. Putney, officers found approximately 18 grams of heroin, 10 grams of suspected crack cocaine, 2.5 grams of powder cocaine, and a Taurus .380 firearm. He was placed under arrest without incident. Officers also confiscated Mr. Putney's two cell phones that he had in his hand.

Officer Thompson took Mr. Putney to the police station. Detective Norris read Mr. Putney his *Miranda* rights and questioned him. On February 14, 2021, Officer Thompson secured search warrants for Mr. Putney's two cell phones.

**ARGUMENT**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The protections of the Fourth Amendment are applied to the states through the Fourteenth

---

[2] For reference, a regular paperclip weighs about 1 gram. https://www.reference.com/science-technology/things-measured-grams-e11bf97ffb2fcad6

3

Amendment. *Wolf v. Colorado*, 338 U.S. 25, 27-28 (1949). "When a police officer stops a car and detains its occupants, the traffic stop amounts to a 'seizure' within the meaning of the Fourth Amendment." *United States v. White*, 836 F.3d 437, 440 (4th Cir. 2016) (citing *Brendlin v. California*, 551 U.S. 249, 255 (2007)); *Whren v. United States*, 517 U.S. 806, 809-10 (1996)); *see also United States v. Hill*, 852 F.3d 377, 381 (4th Cir. 2017). A traffic stop communicates to the driver and passengers that they are not free to "terminate the encounter with the police and move about at will," and that all occupants remain detained for the duration of the stop. *Arizona v. Johnson*, 555 U.S. 323, 327, 333 (2009) (citing *Brendlin*, 551 U.S. at 255, 257).

Pursuant to *Terry v. Ohio*, 392 U.S. 1, 20 (1968), a court "analyze[s] the propriety of a traffic stop on two fronts. First, [it] analyze[s] whether the police officer's action was justified in its inception. Second, [it] analyze[s] whether the police officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." Once a traffic stop is initiated, "the officer may request a driver's license and registration, run a computer check, and issue a citation, but … '[a]ny further detention for questioning is beyond the scope of a *Terry* stop and therefore illegal unless the officer has a reasonable suspicion of a serious crime.' " *United States v. Brugal*, 209 F.3d 353, 358 (4th Cir. 2000) (en banc) (emphasis added) (quoting *United States v. Rusher*, 966 F.2d 868, 876-77 (4th Cir. 1992)).

### I. The government must meet its burden that the traffic stop was justified at its inception.

In evaluating the constitutionality of a traffic stop for the first prong under *Terry*, courts must determine whether there was a constitutional basis for the traffic stop at the outset. *White*, 836 F.3d at 440. The government bears the burden of justifying the actions of law enforcement that result in a warrantless search and seizure. *See Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971) (noting that "the burden is on those seeking the exemption to show the need for it").

The officer alleged that Mr. Putney was traveling the wrong way down 25th Street, a one-way street. His report states that he then "caught up with" the Malibu to initiate the stop. The body camera shows that Mr. Putney's and Officer Thompson's cars were facing in the correct direction on 25th Street, which may call into question the basis for the stop.

**II.    Officers unconstitutionally prolonged the traffic stop.**

To satisfy *Terry*'s second prong—which asks whether officers' actions after the initiation of a stop were reasonably related in scope to the circumstances that justified the stop—"the investigative methods employed should be the least intrusive means necessary" to verify or dispel the officer's suspicions justifying the stop, and the police must "diligently pursue" their investigation toward this end. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Or, as the Fourth Circuit recently put it, "an officer need not employ the least intrusive means conceivable in executing a stop, but he still must be reasonably diligent and must use the least intrusive means reasonably available." *United States v. Hill*, 852 F.3d 377, 381-82 (4th Cir. 2017) (internal quotation marks omitted). "If a police officer wants to detain a driver beyond the scope of a routine traffic stop… [it] requires either the driver's consent or a 'reasonable suspicion' that illegal activity is afoot." *United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008).

The amount of time that an officer unlawfully prolongs a traffic stop does not matter. "Even a de minimis extension violates the Fourth Amendment." *United States v. Miller*, 54 F.4th 219, 228 (4th Cir. 2022) (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). "The principal inquiry . . . is the officer's diligence—i.e., his persevering or devoted application to accomplish the undertaking of ascertaining whether the suspected traffic violation occurred, and, if necessary, issuing a ticket." *United States v. Guijon-Ortiz*, 660 F.3d 757, 766 (4th Cir. 2011) (internal citation omitted); *see also Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) ("[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that

warranted the stop . . . and attend to related safety concerns."). "If the totality of the circumstances, viewed objectively, establishes that the officer, without reasonable suspicion, definitively abandoned the prosecution of the stop and embarked on another sustained course of investigation, that would surely bespeak a lack of diligence." *Guijon-Ortiz*, 660 F.3d at 766 (internal quotation omitted). The "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez*, 575 U.S. at 354.

Upon stopping the Chevrolet Malibu, Officer Thompson told Mr. Putney why he stopped the vehicle – no lights and driving the wrong way on a one-way street. Asking Mr. Putney if he had any alcohol that evening, it quickly became clear that Officer Thompson was investigating a possible driving under the influence (DUI), in violation of state law. After determining that Mr. Putney's license was suspended, Officer Thompson ordered him to step out of the vehicle. Officer Thompson asked him a few questions about his evening and conducted two pre-exit field sobriety tests to gauge whether Mr. Putney was intoxicated. Based on Mr. Putney's performance, Officer Thompson quickly stopped being concerned that Mr. Putney was intoxicated while driving – it was clear that he was not. At this point, Officer Thompson could have written the simple traffic tickets for driving without lights or driving the wrong way down 25th Street; he could have given Mr. Putney a summons for driving on a suspended license. But the officer began neither of those. To the contrary, as Mr. Putney was talking to his cousin on the phone to come pick up the car, *officers told him to hang up*, and he complied with the command. That command was inconsistent with the initial investigation. Rather, it was consistent with an investigation into something other than the licensure issue or the alleged traffic infractions that led to the stop. This itself extended the stop.

Moreover, once Officer Thompson instructed Mr. Putney to stand by the officer's vehicle with Officer Gravatt, Officer Thompson switched his attention away from Mr. Putney and the alleged traffic violations. He then focused his full attention toward the passenger. This was the

6

moment the investigation deviated from the traffic stop. Everything after this point was an illegal extension of the stop. *See United States v. Boyce*, 351 F.3d 1102, 1107 (11th Cir. 2003) (holding that a criminal history check that is **not** part of the original traffic stop investigation unjustifiably prolongs the driver's detention under the Fourth Amendment).

The separate drug investigation began with Officer Thompson walking away from Mr. Putney to question Mr. Greene about a smell of marijuana in the car and possible drug use. Mr. Greene responded that he had smoked marijuana earlier that night and produced a small amount from his pocket. Officer Thompson instructed him to step out of the car, and immediately began searching his person. When nothing was found on Mr. Greene, Thompson sent him to stand with Officer Crutcher and immediately began searching the passenger side of the vehicle, both the front seat and the back seat.

An extension of the stop is only permissible under the Fourth Amendment if the officer "has a reasonable suspicion of a serious crime." *Brugal*, 209 F.3d at 358 (citing *United States v. Rusher*, 966 F.2d 868, 876-77 (4th Cir. 1992)). At the time of the stop in 2021, however, possession of marijuana was not a crime in Virginia and was not an arrestable offense. Possession of marijuana was decriminalized in July 2020 and subject only to a $25 civil penalty.[3] The Fourth Amendment does not permit a warrantless search based on a mere civil infraction. *Virginia v. Moore*, 553 U.S. 164, 177 (2008) ("Officers issuing citations… do not have the same authority to search.")

---

[3] Virginia Legislative Information System, *2020 Session: SB2 Marijuana; definitions, possession and consumption, civil penalties, report*, available at https://lis.virginia.gov/cgi-bin/legp604.exe?201+sum+SB2#:~:text=Possession%20and%20consumption%20of%20marijuana,are%20a%20Class%201%20misdemeanor (last visited April 6, 2023).

### III. The odor of marijuana or simple possession of marijuana cannot establish probable cause to search a vehicle.

The Fourth Amendment requires police to secure a warrant before conducting a search. *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). Under the automobile exception to the warrant requirement, a warrantless search is permissible if the officers have established probable cause that evidence of crime will be found in the car. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The totality of the circumstances determines whether probable cause exists. The Supreme Court has long stated that "probable cause is a fluid concept." *Id.* at 232.

To be clear, Fourth Circuit caselaw has held that the smell of marijuana can provide probable cause to search a vehicle after a lawful stop. *See United States v. Humphries*, 372 F.3d 653 (4th Cir. 2004) ("We have repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place… While smelling marijuana does not assure that marijuana is still present, the odor certainly provides probable cause to believe that it is."); *see also United States v. Sheetz*, 293 F.3d 175, 184 (4th Cir. 2002) (related to traffic stop). But the recent and rapid changes to marijuana laws alter the totality-of-the-circumstances test for probable cause.

When *Humphries* was decided in 2004, it relied on Virginia state statutes, not federal statutes. At the time, simple possession of any amount of marijuana was a crime under state law and constituted *per se* contraband.[4] *Id.* at 658. In *Humphries*, Richmond police officers attempted to stop the defendant on foot, noting the smell of marijuana as they followed him, which the Fourth Circuit held provided probable cause to arrest him. *Id.* at 660. Upon searching Mr. Humphries incident to arrest, the officers found Percocet, crack cocaine, and a firearm. He was formally charged in federal court on related offenses, including 21 U.S.C. § 841 and 18 U.S.C. § 924(c). *Id.* at 656. But the

---

[4] *Per se* contraband is an "object[] the possession of which, without more, constitutes a crime." *One 1958 Plymouth Sedan v. Com. of Pa.*, 380 U.S. 693, 699 (1965).

*Humphries* court did not base its analysis on federal law; the Fourth Circuit only mentioned 21 U.S.C. §§ 841, 844 (federal drug statutes) when discussing the procedural posture of the case. In its legal analysis under the totality of the circumstances, the court solely relied on Virginia law. *Id.* at 658 ("Under Virginia law, it is a crime to possess marijuana, Va. Code Ann. § 18.2-250.1.").

*Humphries* remains good law in the Fourth Circuit, but only insofar as the substantive state criminal law undergirding its analysis still applies. When formerly criminal conduct is no longer criminal, it becomes unconstitutional for police to arrest people for such conduct or to search for evidence of it. The Supreme Court held in *Virginia v. Moore*, 553 U.S. 164 (2008), that "when an officer has probable cause to believe a person committed even a minor **crime** in his presence… the arrest is constitutionally reasonable." *Id.* at 170 (emphasis added). But this does not extend to civil citations. "Officers issuing citations… do not have the same authority to search." *Id.* at 177 (citing *Knowles v. Iowa*, 525 U.S. 113 (1998) (holding that the Fourth Amendment was violated when an officer lawfully stopped a vehicle for speeding, issued a citation to a driver for speeding, but used that citation as a basis to search the vehicle)).

While marijuana was once *per se* contraband, the legal landscape has changed drastically in recent years. Currently, 21 states and the District of Columbia have legalized recreational marijuana. Colorado and Washington state were the first to legalize marijuana for personal use in 2012. Over the next decade, 20 states would join, with Virginia and Maryland passing legislation within the last two years.[5] In addition to those 21 states and the District of Columbia, another 16 states have a

---

[5] States where marijuana is legal recreationally are: (2012) Colorado, Washington; (2014) Alaska, Oregon, D.C.; (2016) California, Maine, Massachusetts, Nevada; (2018) Michigan, Vermont; (2019) Illinois; (2020) New Jersey, Montana, South Dakota, Arizona; (2021) Virginia, New York, Connecticut, New Mexico; (2022) Rhode Island, Maryland, Missouri. *See* Alex L. Matthews, Christopher Hickey, Matt Stiles, *Where is marijuana legal and how do people feel about it? Five charts show the shifting landscape*, CNN (Mar. 7, 2023) *available at* https://www.cnn.com/2023/03/07/us/20230306-oklahoma-marijuana-vote-five-charts-dg/index.html (last visited Apr. 5, 2023).

medical cannabis program, many of which have also decriminalized a personal amount of marijuana. *Id.*[6] Thus, at least 37 of the 50 states (38 including the District of Columbia) allow citizens to possess and use marijuana recreationally or medically. In these places, marijuana is not *per se* contraband.

The timing of Mr. Putney's traffic stop in February 2021 is important in this case. In July 2020, Virginia decriminalized marijuana such that possession of up to one ounce would result in a mere $25 civil fine.[7] Not long after on July 1, 2021, adults 21 years and older were allowed to possess up to one ounce of marijuana legally for recreational purposes in Virginia. Va. Code Ann. § 4.1-1100. This changes the probable-cause analysis. *Humphries* is inconsistent with the decriminalization and legalization of marijuana in the majority of states. Today, in Virginia, simple possession of marijuana is not a crime, nor was it when Mr. Putney was stopped. As such, its odor or presence cannot serve as the basis for probable cause.

**IV. Even if the odor marijuana provided probable cause to search the vehicle and Mr. Greene, the officers did not have probable cause to search and then arrest Mr. Putney without a warrant.**

Warrantless arrests are permitted where there is probable cause to believe a felony is being or has been committed, based on the totality of the circumstances. *Gates*, 462 U.S. at 230-31. The Fourth Circuit held in *United States v. Sakyi*, 160 F.3d 164, 169 (4th Cir. 1998), that "when drugs are suspected in a vehicle and the suspicion is **not readily attributable to any particular person** in the vehicle, it is reasonable to conclude that all occupants of the vehicle are suspect." *Id.* (emphasis added). But if the drugs **are** readily attributable to a particular person in the vehicle, then officers don't have blanket permission to search and arrest everyone who was in the car.

---

[6] *Id.*; *see also* Alonzo Martinez, *The Bluegrass State Has Gone Green – Medical Marijuana Legalized in Kentucky* (Mar. 31, 2023) (listing Kentucky as 38th state, including D.C.).*available at* https://www.forbes.com/sites/alonzomartinez/2023/03/31/the-bluegrass-state-has-gone-greenmedical-marijuana-legalized-in-kentucky/?sh=6e4ea84e9661 (last visited Apr. 5, 2023).

[7] Virginia Legislative Information System, 2020 Session, *supra.*

10

Officer Thompson's concerns with Mr. Putney were obviously related to a possible DUI. But once that concern was dispelled, it is notable that the officer did not direct any questions about marijuana to Mr. Putney. Instead, Officer Thompson specifically approached Mr. Greene, who remained in the passenger seat, about the smell of marijuana in vehicle. He asked Mr. Greene – and only Mr. Greene – whether there was any marijuana in the car, whether he had used marijuana recently, and whether he had any on him. Mr. Greene admitted to smoking earlier and removed three grams of marijuana from his person.

Once retrieving the small amount of marijuana, the officer could see that it was a personal amount and was clearly only subject to a $25 civil fee. This should have ended the extended investigation given the amount of marijuana and the decriminalization. Instead, Officer Thompson conducted a full search and pulled items out of his pockets. Nothing notable was found in his pockets and Mr. Greene was cooperative. Then, Officer Thompson began searching the car, specifically starting around the passenger seat and then moving to the backseat on the passenger side. The black plastic bag he found in the backseat was located behind where Mr. Greene had been sitting. The bag contained not only cocaine, but Mr. Greene's medical card with his name and date of birth. Both the marijuana and the cocaine were "readily attributable" to Mr. Greene.

Throughout this secondary investigation into Mr. Greene, Mr. Putney remained by the officer's vehicle, sober and compliant. Yet with the discovery of Mr. Greene's cocaine, Mr. Putney was immediately searched and handcuffed. "But, a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). Based purely on a civil infraction of marijuana and on cocaine that actually had Mr. Greene's medical card with it, there was no probable cause related to Mr. Putney, and all evidence from the search of his person should be suppressed.

## CONCLUSION

All evidence obtained from the search of Mr. Putney and his vehicle, and any evidence derived from it, must be suppressed because the search violated the Fourth and Fourteenth Amendments. *See Wong Sun v. United States,* 371 U.S. 471 (1963). The decriminalization of marijuana in Virginia, subject only to a $25 civil fee, inherently alters the totality-of-the-circumstances analysis. As possession of marijuana had ceased being a criminal offense, the odor or marijuana could not serve as a basis to believe a crime was being committed. Even once the vehicle and Mr. Greene were searched, all evidence pointed consistently at Mr. Greene and did not provide probable cause to search Mr. Putney without a warrant. Mr. Putney requests a hearing on this motion.

Respectfully submitted,

LADRALE ANTONIO PUTNEY

By: _____/s/_____
Lindsay McCaslin
VSB # 78800
Assistant Federal Public Defenders
Office of the Federal Public Defender
500 East Main Street, Suite 500
Norfolk, Virginia 23510
(757) 457-0800 (phone)
(757) 457-0880 (telefax)
lindsay_mccaslin@fd.org